1

2

3

4

5

6

7

8                **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JACK McKARSON, II,                      No. 2:12-CV-0065-CMK

12              Plaintiff,

13        vs.                            <u>MEMORANDUM OPINION AND ORDER</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,

15
                Defendant.
16
    _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21  judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22  before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-

23  motion for summary judgment (Doc. 19).

24  / / /

25  / / /

26  / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 25, 2008.  In the application, plaintiff claims that disability began on October 2, 2003.  Plaintiff claims that disability is caused by a combination of ". . .obesity, sleep apnea, diabetes mellitus II, depression, neuropathy, thoracic degenerative disc disease, and chronic pain."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 1, 2010, before Administrative Law Judge ("ALJ") Mark C. Ramsey.   In a October 22, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has the following severe impairment(s): morbid obesity; back/joint pain; sleep apnea; hand numbness and cramping; swollen feet and ankles; knee pain; ear infections; punctured eardrums; diabetes; and chronic major depressive disorder;
>
> 2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.    The claimant has the following residual functional capacity: full range of sedentary work, except the claimant is limited mentally to simple unskilled work;
>
> 4.    Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on November 10, 2011, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

1  support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones</u>

4  <u>v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See <u>Hammock v.</u>

6  <u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v.</u>

11  <u>Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14

15  **III.  DISCUSSION**

16      In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to

17  properly assess plaintiff's obesity; (2) the ALJ improperly rejected the opinions of consultative

18  and examining medical professionals; (3) the ALJ rejected plaintiff's credibility without

19  articulating proper reasons for doing so; (4) the ALJ improperly rejected lay witness evidence;

20  and (5) the ALJ improperly applied the Medical-Vocational Guidelines despite non-exertional

21  limitations.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

A.    **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

1  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

2  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

3  see also Magallanes, 881 F.2d at 751.

4              Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician,

5  Dr. Oo (referred to as "Dr. Htan" by the ALJ), that plaintiff would need to take unscheduled

6  breaks and lie down for 20-30 minutes every 30-60 minutes during an 8-hour workday and that,

7  on average, plaintiff would miss about four days of work per month due to his impairments or

8  treatment.  Plaintiff also argues that, though the ALJ "purported to accord 'great weight'" to the

9  opinion of the agency consultative examining psychologist, Dr. McCarthy, the ALJ's residual

10  functional capacity assessment failed to account for the doctor's findings regarding plaintiff's

11  mental impairments.

12              1.      Dr. Oo

13          As to Dr. Oo (referred to as "Dr. Htan" by the ALJ), the ALJ stated:

14          . . . [T]he medical opinions by Dr. Htan were given little weight as the
            medical assessment was not supported by the [state agency]
15          determinations, CE by Dr. Goyal, or treating, clinical, and diagnostic
            findings.
16

17  The court finds that the ALJ did not err in discounting Dr. Oo's opinion.  Dr. Oo's opinion is

18  contained in a June 22, 2010, "Thoracic Spine Residual Functional Capacity Questionnaire."  In

19  this statement, Dr. Oo states that he has seen plaintiff for approximately one to two months since

20  December 15, 2009.  While the questionnaire indicate numerous specific limitations, it is not

21  accompanied by any kind of explanation.  For example, Dr. Oo opines that plaintiff can sit less

22  than two hours in an 8-hour workday, but does not say why this is so.  He does not attribute any

23  particular impairment to this limitation.  The same is true as to Dr. Oo's opinion that plaintiff can

24  stand/walk for less than two hours in an 8-hour workday.  Nor does the doctor provide any

25  explanation or support for his conclusion that plaintiff must take breaks up to 30 minutes every

26  30-60 minutes, during which time he would have to lie down.  One would expect that such a

severe limitation (amounting to breaks lying down half the time) would be indicated by obvious

clinical findings.  Dr. Oo, however, cites to none.

2.    Dr. McCarthy

As to Dr. McCarthy, the ALJ stated:

> Dr. Montez McCarthy (Psy.D.) Performed a psychiatric CE July 19, 2008,
> for the chief complaint of depression.  Dr. McCarthy indicated the
> claimant had no history of psychiatric hospitalizations and no history of
> suicide attempts.  The mental status examination was normal, except his
> facial expressions were tense and sad, mental activity and velocity were
> slow, volume was soft, limited quantity of speech, mood appeared to be
> chronically and moderately depressed, and depressed affect.  Diagnosis
> was major depressive disorder, chronic, moderate.  The functional
> assessment indicated the claimant would be moderately limited in his
> ability to remember locations and complete repetitive tasks, understand
> and remember and/or carry out very short and simple or detailed
> instructions, also moderately limited in his judgment and awareness of
> socially appropriate behavior, and interact with co-workers and the general
> public.  He was mildly to moderately limited in his ability to maintain
> attention and concentration for extended periods, accept instructions from
> a supervisor, and respond appropriately to criticism, perform activities
> within a schedule, maintain regular attendance, be punctual, complete a
> normal workday and workweek without interruptions from psychologically
> based symptoms, and withstand the stress of a routine workday, and deal
> with the various changes in the work setting (Exhibit 11F).

Without elaborating, the ALJ gave Dr. McCarthy's opinion "great weight."

Plaintiff contends that, although the ALJ gave Dr. McCarthy's opinion great

weight, the ALJ's residual functional capacity assessment that plaintiff can perform simple

unskilled work ". . .does not adequately capture Mr. McKarson's limitations in terms of

endurance and pace, relation to co-workers and the public, ability to perform even simple work,

and ability to take directions and adapt to changes in the workplace."  According to plaintiff: "In

essence, the ALJ tacitly rejected Dr. McCarthy's assessed limitations without providing any

reasons for so doing. . . ."

/ / /

/ / /

/ / /

1       As to plaintiff's "endurance and pace," ability to perform "even simple work," and

2   ability to "adapt to changes in the workplace," Dr. McCarthy failed to render any kind of

3   conclusive opinion because he stated merely that plaintiff <u>may</u> be limited in these areas.  Further,

4   while the doctor did opine with more apparent certainty that plaintiff would be limited in his

5   ability to interact with co-workers and the general public and in his ability to accept instructions,

6   Dr. McCarthy equivocated by stating that the level of limitation would be dependent on

7   plaintiff's level of depression.  Again, this can hardly been seen as a definitive opinion on these

8   subjects.  Where Dr. McCarthy offered unequivocal opinions, the ALJ accepted them.

9       **B.**    **Plaintiff's Obesity**

10      In 1999, obesity was removed from the Listing of Impairments.[1]  Obesity may still

11  enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's

12  musculoskeletal, respiratory, or cardiovascular system."  <u>Celaya v. Halter</u>, 332 F.3d 1177, 1181

13  n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to

14  consider obesity in a multiple impairment analysis, but only where it is "clear from the record

15  that [the plaintiff's] obesity . . . could exacerbate her reported illnesses."  <u>Id.</u> at 1182; <u>see also</u>

16  <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing <u>Celaya</u> and concluding that

17  a multiple impairment analysis is not required where "the medical record is silent as to whether

18  and how claimant's obesity might have exacerbated her condition" and "the claimant did not

19  present any testimony or other evidence . . . that her obesity impaired her ability to work").

20  Where a multiple impairment analysis is not required, the ALJ properly considers obesity by

21  acknowledging the plaintiff's weight in making determinations throughout the sequential

22  analysis.  <u>See</u> <u>Burch</u>, 400 F.3d at 684.

23  / / /

24

---

25      [1]    Under SSR 02-01p, a person with body mass index ("BMI") of 30 or above is
    considered obese.  BMI is the ratio of an individual's weight in kilograms to the square of height
26  in meters (weight divided by square of height).

As to plaintiff's obesity, the ALJ stated:

> . . .[T]he medical evidence fails to set forth evidence of effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the respiratory system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

In discussing the record, the ALJ then noted the following regarding plaintiff's weight:

> In terms of the claimant's alleged complaints, the evidence of record documents he was treated at Home Medical Weight Clinic during the period September 24, 2003, to October 14, 2003, for weight management. There were no clinical or diagnostic records provided (Exhibit 2F).
>
> * * *
>
> Dr. Hari Goyal performed an internal CE March 6, 2008, for the chief complaints of obesity, sleepiness during the day and tiredness, nighttime snoring for 20 years, diagnosed with sleep apnea ten years ago, back pain, and diabetes since 2002. The physical examination was normal except the claimant was obese weighing 273 pounds and had lumbar tenderness. Diagnoses were obesity, obstructive sleep apnea as a result of obesity, diabetes mellitus type 2, and back pain without radiculopathy. The functional assessment indicated the claimant would be limited to sedentary work (Exhibit 6F).
>
> * * *
>
> A thoracic spine residual functional capacity questionnaire completed by Dr. Htan[2] on June 22, 2010, indicated the claimant suffered from extreme obesity, sleep apnea, diabetes mellitus, depression, neuropathy, thoracic degenerative disc disease, and chronic pain. The functional assessment indicated the claimant was limited to less than sedentary work (Exhibit 18F).

/ / /

/ / /

---

[2] The doctor's name appears to be Htun Oo, M.D. Plaintiff refers to this doctor as "Dr. Oo," while the ALJ refers to the doctor as "Dr. Htan."

1   The ALJ added:

2           His complaints [regarding obesity] are further undercut as Dr. Goyal
            indicated the claimant was well built and overweight but had no problems
3           sitting, taking off his shoes, lying down or getting up from the lying down
            position (Exhibit 6F). . . .
4

5       Plaintiff argues:

6           The ALJ failed to evaluate Mr. McKarson's obesity under SSR 02-
        01p as required by law – the ALJ failed to even reference SSR 02-01p.  The
7       ALJ listed obesity as a severe impairment but failed to properly evaluate
        the impact of this additional impairment on Mr. McKarson's ability to
8       function in a sustained manner.  The ALJ concluded that obesity was a
        severe impairment but claimed the "medical evidence fail[ed] to set forth
9       evidence of effects of obesity.  TR 13, 14.  The ALJ erred in so finding.

10
    Plaintiff then outlines portions of the record he contends document his obesity and adds:
11
            Nevertheless, aside from listing obesity at step two, the ALJ failed
12      to discuss the impact of Mr. McKarson's weight on his residual functional
        capacity. . . .  Indeed, Social Security's own consultative examiner [Dr.
13      Goyal] attributed limitations in standing, walking, and sitting to Mr.
        McKarson's being overweight.  TR 233.  In addition, his treating physician
14      [Dr. Oo] assessed him with sitting, standing, and walking limitations as
        [the doctor] felt he would need to take unscheduled breaks and miss work
15      due, in part, to his obesity.  TR. 351.  Despite his diagnoses of
        degenerative disc disease and depression, as well as other obesity related
16      impairments including diabetes and sleep apnea, the ALJ completely
        ignored the significance of Mr. McKarson's obesity on his ability to
17      function in a sustained manner.  The ALJ failed to assess the *combined*
        impact of Mr. McKarson's assessed impairments, including obesity, when
18      determining his residual functional capacity.   (Italics in original).

19          The court finds that the ALJ did not err with respect to consideration of plaintiff's

20  obesity.  While plaintiff accurately points to portions of the record where his weight is

21  documented, and while plaintiff has accurately outlined his various diagnoses, he has failed to

22  point to evidence – other than Dr. Oo's assessment, which the ALJ properly rejected as

23  unsupported by objective clinical findings – that his weight adversely affected his ability to

24  perform simple, unskilled, sedentary work.

25  / / /

26  / / /

9

### C.    Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

   Regarding reliance on a claimant's daily activities to find testimony of disabling

pain not credible, the Social Security Act does not require that disability claimants be utterly

incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .

does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

claimant was entitled to benefits based on constant leg and back pain despite the claimant's

ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

activities are not easily transferable to what may be the more grueling environment of the

workplace, where it might be impossible to periodically rest or take medication").   Daily

activities must be such that they show that the claimant is ". . .able to spend a substantial part of

his day engaged in pursuits involving the performance of physical functions that are transferable

to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

11

1    Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

2            As to plaintiff's credibility, the ALJ first outlined plaintiff's allegations as

3    follows:

4            The undersigned now considers the claimant's subjective complaints as
             required by the Regulations and Social Security Ruling 96-7p, noting he
5            alleged obesity, back/joint pain, sleep apnea, hand numbness and
             cramping, swollen feet and ankles, knee pain, ear infections, punctured
6            eardrums, diabetes, and depression. He alleged he did not do laundry,
             vacuum, clean the bath and shower, or do yard work. He testified he pays
7            his brother to come over and do house chores, and his sister does the
             cooking. He alleged going to the store once a month with his sister for 30
8            minutes, and that he tries to walk the dog in the yard two times a week.
             He alleged he did not work on his truck, but replaced a fuse the day before
9            the hearing and replaced the hood in 2007. He testified to having some
             male friends and relatives, which he goes to Casinos with or goes out to
10           eat with every couple of months. He alleged that he used to do the laundry
             and go to the store in 2008 but it became too difficult. He alleged his back
11           is the most painful and then his hips and legs, had a burning sensation in
             both feet when standing, hands and arms hurt with a pain level of six while
12           taking medications, and cannot bend down to pick up anything off the
             floor. He alleged if he does not take his medication, his burning pain gets
13           to an eight or nine on a ten pain scale. He testified he uses a C-pap
             machine since he was ten years old, sleeps only four to five hours at a
14           time, was "foggy headed" from the medication, and has no energy and
             must nap three to four hours a day. He alleged he had to get up a little bit
15           to have relief for his legs and then lies back down. He testified that in
             discussing his weight problem with the doctors that the solution was
16           bypass surgery but he had no funds for it and believes that if he had the
             surgery he would lose the weight. He alleged he cannot stand without
17           moving around, cannot walk more than a city block without resting, and at
             home he either sits in a recliner or lies down for 20 minutes at a time with
18           his legs elevated otherwise his legs swell and burn. He alleged he cannot
             lift a grocery bag, can lift a gallon of milk, and cannot pick something up
19           from the floor all because of his weight.

20   The ALJ then addressed plaintiff's credibility with respect to his subjective physical complaints:

21           The undersigned cannot find the claimant's pain and other physical
             complaints as set forth above and in the record totally credible as the SA
22           determined he could perform sedentary work (Exhibits 3F-4F, 7F-8F, &
             12F-16F), and the CE functional assessment also indicated the claimant
23           could perform sedentary work activity (Exhibit 6F).

24           His complaints are further undercut as Dr. Goyal indicated the claimant
             was well built and overweight but had no problems sitting, taking off his
25           shoes, lying down or getting up from the lying down position (Exhibit 6F).
             Chart notes from Oroville Family Health Center indicated May 2008 his
26           glucose levels were much improved being 98-120, and A1C level was

1           improved being 8.9 down from 11.  An ophthalmology diabetic
consultation report dated December 21, 2009, indicated the claimant did
2           not have diabetic retinopathy (exhibit 17F, pg. 12).

3           His pain complaints are further eroded as there is no evidence of any
surgery on his back.  There is no evidence of treatment at a pain clinic,
4           pain injections, chiropractic care, or physical therapy.  Lastly, he is able to
perform multiple normal daily activities (testimony).

5

6           Given the preceding factors, his pain and other physical complaints were
found not to be credible.

7 As to plaintiff's mental health complaints, the ALJ stated:

8           The claimant's mental complaints were not credible, and he did not have a
medically determinable mental impairment as there was no evidence of
9           treatment by mental health professionals, psychiatric hospitalizations,
crisis center contacts, or that he sought help from the United Way
10          organizations.  Treating record did not contain evidence he was referred to
any mental health professionals.  The SA determined he did not have a
11          severe mental impairment (Exhibits 3F-4F, 7F-8F, & 12F-16F), and
treating records did not contain evidence that he was considered limited in
12          his ability to perform mental work activities.

13          As stated above, the ALJ properly discounts a claimant's credibility based on the

14 existence of inconsistence statements.  Such is the case here.  In his application, plaintiff stated

15 that he became unable to work in October 2003.  He has also stated, however, that he replaced

16 the hood of a car in 2007 and that he stopped going shopping and doing laundry in 2008 because

17 it became too difficult.  These statements are inconsistent with respect to the date plaintiff states

18 he became unable to work.  If his application is to be believed, he was unable to work in 2003.  If

19 his other statement are to be believed, it would appear that plaintiff's impairments did not

20 become so limiting as to preclude auto repair and normal daily activities until 2007 or 2008.

21 Given this inconsistency concerning a fundamental aspect of plaintiff's allegations – the date on

22 which he became unable to work due to disability – the ALJ was entitled to discount all of

23 plaintiff's statements as not credible.

24 ///

25 ///

26 ///

1          **D.      Lay Witness Evidence**

2                 In determining whether a claimant is disabled, an ALJ generally must consider lay

3    witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

4    919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

5    testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

6    evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

7    F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

8    of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

9    919.  ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party

10   statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin.,

11   574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's

12   testimony, which was similar to the claimant's, for the same reasons given for rejection of the

13   claimant's complaints).

14                 The ALJ, however, need not discuss all evidence presented.  See Vincent on

15   Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain

16   why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700,

17   706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence

18   which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating

19   psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

20   uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

21   controverted by other medical evidence considered in the decision.  See id.  As to lay witness

22   testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

23   concluded that the evidence was properly ignored because it "conflicted with the available

24   medical evidence" assessing the plaintiff's mental capacity.  Id.

25   ///

26   ///

In <u>Stout v. Commissioner</u>, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony.  <u>See</u> 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments.  <u>Id.</u>  The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision.  <u>See</u> <u>id.</u>  Noting that the lay witness testimony in question was "consistent with medical evidence," the court in <u>Stout</u> concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work."  <u>Id.</u> at 1053.  The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless.  <u>See</u> <u>id.</u> at 1054-55.  The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

<u>Id.</u> at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence.  If it is controverted, then the ALJ does not err by ignoring it.  <u>See</u> <u>Vincent</u>, 739 F.2d at 1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it.  <u>See</u> <u>Stout</u>, 454 F.3d at 1053.  However, the Commissioner's regulations <u>require</u> the ALJ consider lay witness testimony in certain types of cases.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling <u>requires</u> the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  <u>See</u> <u>id.</u>  Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence

concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

Plaintiff contends that the ALJ erred by failing to "even reference" a third-party statement provided by plaintiff's sister, Jennifer McKarson. The record reflects that, on July 2, 2008, Ms. McKarson submitted a third party function report. As for daily activities, she stated that plaintiff usually gets up, showers, takes care of his dog, and does some light cleaning. She added, however, that he often takes naps due to chronic pain. Ms. McKarson stated that plaintiff often complains about poor sleep. She added that it is difficult for plaintiff to stand long enough to cook meals. Ms. McKarson stated that plaintiff does light dusting and light cleaning once a week. She stated that plaintiff does not do any yard work because ". . .it hurts to bend down." She also stated that plaintiff does clothes and/or food shopping two to three times a week for one to two hours at a time. Ms. McKarson stated that plaintiff's hobbies and interests include watching TV, computer, reading, and playing cards. She added that he does these activities "fine & very often," though he ". . .did these things . . . on a more social level" before his illness.

Ms. McKarson stated that, due to weight and back pain, plaintiff has difficulty with lifting, squatting, bending, stooping, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and getting along with others. As for walking, Ms. McKarson stated that plaintiff can walk about 150 feet and then needs to stop for three to five minutes before resuming. She added that plaintiff is able to pay attention ". . .usually all the time, but lately he needs to be engaged every few min. or so." She stated that plaintiff can follow verbal and written instructions "fine" and that he has ". . .always been very adaptable." Ms. McKarson concluded her statement with the following:

> I just wanted to add that Jack used to be a very outgoing social guy. However, since he has been in such pain he is withdrawn & gaining weight rapidly. He seems like a different person.

///

1    Here, the court finds that Ms. McKarson did not render any lay opinions on the

2    subject of plaintiff's ability to perform work-related activities – other than his ability to walk and

3    engage in other strength activities  – which required the ALJ's analysis.  Specifically, she stated

4    that plaintiff was "fine" and "adaptable."  While plaintiff may seem a "different person," this

5    does not necessarily suggest a limitation on his ability to work.  As to Ms. McKarson's opinions

6    concerning plaintiff's strength-related abilities, those statements are clearly controverted by the

7    objective medical evidence to the extent Ms. McKarson opines as to limitations precluding

8    simple, unskilled, sedentary work.[3]

9    **E.    Application of the Medical-Vocational Guidelines**

10    The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about

11    disability for various combinations of age, education, previous work experience, and residual

12    functional capacity.  The Grids allow the Commissioner to streamline the administrative process

13    and encourage uniform treatment of claims based on the number of jobs in the national economy

14    for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

15    460-62 (1983) (discussing creation and purpose of the Grids).

16    The Commissioner may apply the Grids in lieu of taking the testimony of a

17    vocational expert only when the Grids accurately and completely describe the claimant's abilities

18    and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

19    Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

20    Grids if a claimant suffers from non-exertional limitations because the Grids are based on

21    exertional strength factors only.[4]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

22

23    [3]    It is not clear to what extent Ms. McKarson opines plaintiff is limited in strength activities.  For example, while she states that plaintiff has difficulty with climbing, she does not

24    say how that limits plaintiff's activities.

25    [4]    Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to

26    perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time

1  "If a claimant has an impairment that limits his or her ability to work without directly affecting

2  his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

3  by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

4  Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

5  even when a claimant has combined exertional and non-exertional limitations, if non-exertional

6  limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

7  1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

8        In cases where the Grids are not fully applicable, the ALJ may meet his burden

9  under step five of the sequential analysis by propounding to a vocational expert hypothetical

10  questions based on medical assumptions, supported by substantial evidence, that reflect all the

11  plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

12  where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the

13  ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

14  1341 (9th Cir. 1988).

15        Regarding the Grids, the ALJ stated:

16        Based on a residual functional capacity for the full range of sedentary
       work, the undersigned concludes that, considering the claimant's age,

17        education, and work experience, a finding of "not disabled" is directed by
       Medical-Vocational Rule 201.28.

18

19

_____

20  and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20
   C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at

21  a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§
   404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time

22  with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
   404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time

23  with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
   404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than

24  100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.
   See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

25        Non-exertional activities include mental, sensory, postural, manipulative, and
   environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R.,

26  Part 404, Subpart P, Appendix 2, § 200.00(e).

1  Plaintiff argues that the ALJ erred because his limitations are "non exertional in the main."

2  Other than to apparently build upon arguments previously raised, plaintiff does not offer any

3  specific reasons why the ALJ was incorrect in concluding that plaintiff's non-exertional

4  limitations do not more than minimally impact his ability to perform simple, unskilled, sedentary

5  work.  For the reasons discussed above, the court does not find error in the ALJ's analysis of the

6  severity of plaintiff's impairments or the impact those impairments have on plaintiff's ability to

7  perform such work.

8

9                              IV.  CONCLUSION

10              Based on the foregoing, the court concludes that the Commissioner's final

11  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

12  ORDERED that:

13              1.      Plaintiff's motion for summary judgment (Doc. 18) is denied;

14              2.      Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

15              3.      The Clerk of the Court is directed to enter judgment and close this file.

16

17  DATED:  September 30, 2013

18                                            _____

19                                            **CRAIG M. KELLISON**
                                             UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26